UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT E. PARKES,

Plaintiff,

v.

GREG COX, et. al.,

Defendants.

3:11-cv-00902-LRH-WGC

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 66.)[1] Plaintiff filed a response (Doc. # 68) and Cross-Motion for Summary Judgment (Doc. # 69.)[2] Defendants filed a reply in support of their motion (Doc. # 72) and response to Plaintiff's cross-motion (Doc. # 73). Plaintiff filed a reply in support of his cross-motion. (Doc. # 75.)

After a thorough review, the court recommends that Defendants' motion be granted and Plaintiff's motion be denied.

**I. BACKGROUND**

At all relevant times, Plaintiff was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Sec. Am. Compl., Doc. # 37 at 1.) The allegations giving rise to this action took place while Plaintiff was housed at Northern Nevada Corrections Center (NNCC). (*Id*.) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) The

---

[1] Refers to court's docket number.

[2] These documents are identical but were docketed separately to reflect that Plaintiff opposes Defendants' motion and seeks summary judgment on his own behalf.

defendants are NDOC Director Greg Cox, NNCC Warden Jim Benedetti, NNCC Food Service Manager Jim Burton, and NNCC Food Service Supervisor Scott Kahler. (*Id*. at 1-2; *see also* Doc. # 35, granting Plaintiff leave to amend to name Scott Kahler in place of Scott Nagle and Jim Benedetti in place of Jack Palmer.)

Plaintiff alleges various constitutional violations related to a fall he sustained in the prison culinary on April 11, 2010, when he alleges he slipped and fell on a wet/slippery/greasy kitchen floor. (Doc. # 37.) On screening, Plaintiff was permitted to proceed with the following claims: (1) First Amendment retaliation in Count I against Burton, Nagle, Cox and Palmer; (2) Eighth Amendment deliberate indifference to safety in Count II against Burton and Nagle; and (3) violation of the Fourteenth Amendment's Equal Protection Clause in Count III. (Screening Order, Doc. # 15.)

In Count I, Plaintiff alleges that because he filed a tort claim with the Nevada Attorney General and an inmate grievance related to the alleged unsafe working conditions present when he slipped and fell, defendants Burton and Nagle engaged in retaliatory conduct by dismissing him from his kitchen job, which was authorized by defendants Cox and Palmer. (Doc. # 37 at 5-7.)

In Count II, Plaintiff alleges that on April 11, 2010, while performing his assigned work duties in the kitchen at NNCC, the floor was wet, greasy, and slippery, and this caused him to fall and suffer a concussion and laceration on his head. (Doc. # 37 at 8-10.) He contends there were no signs or other indications the floor was wet, and on several occasions prior to this incident he told defendants Burton and Nagle that the floors in the kitchen were wet and greasy and posed a substantial safety risk, yet they took no actions to prevent the hazardous conditions. (*Id*.) He alleges that he has seen other workers and staff slip on the floor in the past. (*Id*.)

In Count III, Plaintiff alleges that the State of Nevada has standards for workplace training and safety for all institutional kitchen workers, yet NDOC does not ensure the safety of its inmate employees and treats them differently than "free workers." (Doc. # 37 at 11-13.) He claims that he was not trained, and was told this was because he did not request it, while "free people" working in kitchens do not have to ask for training. (*Id*. at 12-13.)

- 2 -

Defendants move for summary judgment, arguing: (1) Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim because the only grievance he has filed states that he slipped and fell on April 11, 2010, but does not mention anything about losing his prison job or retaliation; (2) they were not deliberately indifferent to Plaintiff's safety because there is no evidence they were aware of the specific risk of his fall, or that they did not respond reasonably to any general risk of which they may have been aware; (3) Plaintiff's equal protection claim fails because he cannot demonstrate that Defendants treated him differently than others similarly situated with an intent to discriminate against him; and (4) they are entitled to qualified immunity. (Doc. # 66.)

In his opposition and cross-motion, Plaintiff argues: (1) Defendants are estopped from asserting the exhaustion defense because he was deterred from filing a grievance related to his termination from employment for fear he would suffer further retaliation; (2) Defendants were on notice of the dangerous conditions in the culinary because the Nevada Health Department issued a report for repair of the culinary floor four months prior to Plaintiff's fall, yet they made no efforts to fix the floor; (3) Defendants Cox and Benedetti are liable as supervisors because they were aware of Nevada Health Department report; (4) Defendants violated the Equal Protection Clause because they admit that Plaintiff received no culinary safety training, while other inmates did; and (5) Defendants are not entitled to qualified immunity. (Docs. # 68/69.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Retaliation**

**1. Summary of Argument**

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to this claim because he only filed one grievance since April 2010, which is limited to his assertion that

he slipped, fell and was injured due to alleged unsafe working conditions, but makes no mention of having lost his culinary job. (Doc. # 66 at 4-6; Doc. # 66-8, Navarro[3] Decl. ¶¶ 5-6.)

Plaintiff argues that Defendants are estopped from asserting the exhaustion defense because he was deterred from filing a second grievance due to fear of further retaliation. (Doc. # 69 at 2, 3-4.) To support his position, Plaintiff cites an Eleventh Circuit case, *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), where the court found no exhaustion requirement when a prison official imposes a serious threat of retaliation against a prisoner which would deter the prisoner from lodging a grievance. (Doc. # 69 at 3-4.)

**2. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id.* (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").[4] As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If

---

[3] Monica Navarro is an Administrative Assistant I at NNC, designated as custodian of records for NNCC's institutional grievance files. She reviewed Plaintiff's grievance file, and grievance number 2006-28-99606 is the only grievance submitted to NDOC by Plaintiff since April 2010. He has not filed a grievance related to his prison employment.

[4] If, on the other hand, the failure to exhaust is clear from the face of the complaint, the defendant may raise the defense in a motion to dismiss under Rule 12(b)(6). *See id.*, 1169. "[S]uch cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Id.* at 1169

1   material facts are disputed, summary judgment should be denied, and the district judge rather

2   than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71

3   (citations omitted).

4          The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely

5   or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion."

6   *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the

7   agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

8   *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

9          If the court concludes that administrative remedies have not been properly exhausted, the

10  unexhausted claim(s) should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108,

11  1120 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir.

12  2014).

13         **3. Analysis**

14         Defendants have come forward with evidence that Plaintiff failed to file a grievance

15  related to his claim that he was allegedly retaliated against when he was fired from his prison

16  culinary job because he filed a tort claim and grievance related to his fall in the culinary on

17  April 11, 2010. Plaintiff concedes he did not file a grievance related to his retaliation claim;

18  instead, he argues that Defendants should be estopped from asserting the exhaustion defense

19  because, in essence, the grievance process was unavailable to him because he feared further

20  retaliation.

21         "The PLRA mandates that inmates exhaust all available administrative remedies before

22  filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983."

23  *Id*. (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To be clear, "[a]n inmate is required to

24  exhaust only *available* remedies." *Id*. (emphasis original) (citing *Booth v. Churner*, 532 U.S.

25  731, 736 (2001)). "To be available, a remedy must be available 'as a practical matter'; it must be

26  'capable of use; at hand.'" *Id*. (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)).

27         Once a defendant shows that the plaintiff did not exhaust available administrative

28  remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is

something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof, however, remains with the defendant. *Id.*

The Ninth Circuit has recognized several instances where administrative remedies are unavailable. "[W]here a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, 'the Warden's mistake rendered [the plaintiff's] administrative remedies effectively unavailable.'" *Albino*, 747 F.3d at 1172-73 (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)).

"[W]here prison officials declined to reach the merits of a particular grievance 'for reasons inconsistent with or unsupported by applicable regulations,' administrative remedies were 'effectively unavailable.'" *Id.* at 1173 (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 823-24 (9th Cir. 2010)).

Where an inmate "did not have access to the necessary grievance forms within the prison's time limits for filing a grievance," the administrative remedies were effectively unavailable. *Id.* (citing *Marella v. Terhune*, 568 F.3d 1024, 1027-28 (9th Cir. 2009)). Nor is an inmate required to exhaust a remedy that he had been reliably informed was not available to him. *Id.*

In *Albino v. Baca*, the Ninth Circuit held that where the jail manual detailing the grievance process was for staff use only and was not made available to inmates, and inmate request forms were never provided to the inmate despite repeated complaints, the jail did not provide an available administrative remedy. *Albino*, 747 F.3d at 1177.

The Ninth Circuit has not held that administrative remedies are unavailable under the circumstances suggested by Plaintiff. As Defendants point out, Plaintiff's logic would extend an exception to the exhaustion anytime an inmate alleges a retaliation claim. Moreover, Plaintiff has not presented any evidence that the grievance process was in fact unavailable to him as a result of his alleged fear of further retaliation. Instead, the evidence demonstrates that Plaintiff continued with the exhaustion process in his grievance related to the slip and fall well after the

alleged retaliatory conduct that forms the basis for this claim occurred, *i.e.*, his termination from the culinary job. He was terminated from his prison culinary position on May 17, 2010. He filed the informal level grievance concerning his slip and fall several weeks later, on June 3, 2010. (Doc. # 69-2 at 38.) He filed the first level on August 5, 2010, and the second level on September 15, 2010. (*Id*. 44-49.) This belies his assertion that he feared further retaliation if he pursued the grievance process.

Accordingly, the court finds that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim, and it should be dismissed without prejudice.

**B. Eighth Amendment Deliberate Indifference**

**1. Defendants' Argument**

Defendants argue there is no evidence they knew of the specific risk of Plaintiff's fall, or that they did not respond reasonably to any general risk of a fall in a kitchen of which they may have been aware. (Doc. # 66 at 7.) They contend that in the two years prior to this incident, NNCC incident reports show only one other incident of an inmate slipping in the culinary, which occurred in April 2009, where an inmate slipped on Jell-O, and the slip did not result in injury. (Doc. # 66-2 ¶¶ 8-11; Doc. # 66-3.) Culinary Daily Shift Logs for the two years preceding the incident record no staff injuries and only five inmate injuries in the NNCC culinary during that time period, only one of which involved a slip and fall. (Doc. # 66-4.)

Plaintiff asserted in discovery that certain employees made insurance claims stemming from slip and fall injuries, but Defendants contend this is not true and is not supported by NDOC's records. (Doc. # 66 at 8; Doc. # 66-5, Bargmann[5] Decl. ¶ 3.)

Accordingly, Defendants maintain that there is no evidence that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff. (Doc. # 66 at 8.)

Defendants acknowledge that a kitchen has an inherent potential for wet or slick floors,

---

[5] Kimberly (Susie) Bargmann is a Personnel Officer II for NDOC Human Resources Division, who maintains custody of personnel documents and records, including records of NDOC employee injuries and claims, including C-1 insurance claims, and reviewed NDOC's records regarding claims for employment related injury for Donald Hicks, D. Coffin, John Ramos, and Richard Clarke, and found none of their claim records contain any claim, including C-1 claims, related to any injury, including slip and falls, from April 2008 to April 2010.

but claim that they responded reasonably to this general risk by training inmates regarding how to account for wet/slick floors. (Doc. # 66 at 8; Doc. # 66-6; Doc. # 66-7, Kahler Decl. ¶ 5.) Defendants acknowledge that they do not have a record indicating that Plaintiff received this training, but the records establish that the training did occur during the relevant time period. (*Id.*)

Defendants also argue that because there is no evidence that defendants Kahler and Burton were area of a risk of harm to Plaintiff from a slip and fall in the culinary, there is likewise no evidence to support a claim against supervisor defendants Benedetti and Cox. (Doc. # 66 at 10.)

**2. Plaintiff's Argument**

Plaintiff claims that Defendants were put on notice of the dangerous condition of the culinary floor because the Nevada Health Department issued a report indicating that the floor needed to be repaired on December 28, 2009, less than four months prior to Plaintiff's fall, yet the NNCC culinary work request maintenance logs do not reflect that the repairs were made. (Docs. # 68/69 at 2, 11-12; Doc. # 69-1 at 39-43 (Nev. Health Dept. Memo.); Doc. # 69-2 at 14-25 (work order logs).)

He contends that Cox and Benedetti are liable as supervisors because their discovery responses admit that they were aware of the 2009 health inspection report demanding that repairs be made to the culinary floor. (Doc. # 69 at 17, citing Exhibits 5a-k, 7a-k, and 8a-k.)

**3. Standard**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

The prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834.   Under the deliberate indifference

standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *Id*. First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id*. (citations and quotations omitted). When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citations omitted).

Second, the inmate must satisfy the subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45. A plaintiff "seeking 'a remedy for unsafe conditions [need not] "'await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.'" *Id.* at 845 (citation omitted).

**4. Analysis**

Defendants have come forward with evidence that they did not know of and disregard a serious risk to Plaintiff's safety in the context of a slip and fall in the prison's kitchen. They provide documentation consisting of NNCC incident reports which show only one other incident where an inmate slipped in the culinary, in April 2009, where the inmate slipped on Jell-O. (Doc. # 66-2 ¶¶ 8-11; Doc. # 66-3.) They also provide daily shift logs for the two years preceding Plaintiff's fall, which show no staff injuries, and five inmate injuries, only one of which involved a slip and fall. (Doc. # 66-4.) There were no employee insurance claims stemming from slip and fall injuries during the relevant time period. (Doc. # 66-5, Bargmann Decl. ¶ 3.)

Defendants acknowledge that a kitchen poses inherent potential for wet or slick floors, but they responded to this general risk by providing training to inmates regarding how to account for wet/slick floors, and while they cannot provide a record containing Plaintiff's signature, they

1   provided records that indicate that this training did take place prior to Plaintiff's fall. (Doc. # 66-

2   6; Doc. # 66-7, Kahler Decl. ¶ 5.)

3       Plaintiff does not contest Defendants' evidence. Instead, he maintains that they knew of

4   the risk of slip and fall as a result of a December 28, 2009 report from the Nevada Health

5   Department which demanded repairs be performed to the culinary floor, but this work was not

6   done. (Docs. # 68/69 at 2, 11-12; Doc. # 69-1 at 39-43.)

7       The document Plaintiff refers to indicates that the health department is required by statute

8   to inspect food service operations at least once a year, and in 2009, the inspection was conducted

9   on December 4. (Doc. # 69-1 at 39.) It noted the following deficiencies with respect to the

10  culinary:

11          3. Significant damage to the floors was found in the walk-in refrigerators located
            to the back of the culinary. Please repair it. Floors must be properly constructed
            and nonabsorbent to assure proper cleaning.

12          ...
            5. Significant damage to the floor tiles was found throughout the culinary. Please

13          repair. Floors must be properly constructed and nonabsorbent to assure proper
            cleaning....

14  (Doc. # 69-1 at 39-40.)

15      Plaintiff's complaint, as well as his grievance regarding the incident, allege that he fell as

16  a result of a wet/slippery/greasy floor. There is nothing in the complaint, and no evidence in

17  Plaintiff's motion or opposition, to connect his fall on April 11, 2010, with the damage to the

18  floors in the walk-in refrigerators or damage to the floor tiles noted by the health department in

19  2009. In other words, the December 28, 2009 memorandum from the health department does not

20  establish that these Defendants knew of a risk of a fall in the culinary associated with

21  wet/slippery/greasy floors.

22      Notably, neither Plaintiff's motion nor his opposition mention or provide evidence to

23  support the allegation in his complaint that on several occasions prior to this incident he told

24  defendants Burton and Nagle that the floors in the kitchen were wet and greasy.

25      Having failed to raise a genuine dispute of material fact in response to Defendants'

26  motion, and having similarly failed to establish the absence of a genuine dispute of fact in

27  connection with his own motion, the court recommends that Defendants' motion be granted and

28  Plaintiff's motion be denied as to this claim.

1  ///

2  ///

3  **C. Equal Protection**

4      **1. Defendants' Argument**

5      Defendants argue that to prevail on an equal protection claim, Plaintiff has to establish

6  that Defendants treated him differently than they have treated others similarly situated; however,

7  Plaintiff's claim is based on the allegation that Defendants allegedly do not properly train inmate

8  workers, as opposed to other hypothetical non-inmate kitchen workers, he is treated differently

9  than others similarly situated. (Doc. # 66 at 9.)

10     **2. Plaintiff's Argument**

11     Plaintiff argues that he is entitled to summary judgment, and Defendants are not, because

12 they admit that Plaintiff never received safety training while other inmates did, and therefore, he

13 was treated differently than those similarly situated. (Docs. # 68/69 at 2, 14.)

14     **3. Defendants' Reply**

15     In their reply, Defendants contend that the alleged failure to provide Plaintiff with safety

16 training while providing other inmates with safety training has no bearing on Plaintiff's equal

17 protection claim. (Doc. # 72 at 5.) Plaintiff's claim is that NNCC did not train its inmate

18 employees on safety while it provider other, unidentified "free" workers with training. (*Id.*) Even

19 if this were Plaintiff's claim, they assert that there is no evidence of discriminatory intent to

20 provide other inmates with safety training and not Plaintiff. (*Id.*)

21     **4. Standard**

22     The Fourteenth Amendment prohibits the denial of "the equal protection of the laws."

23 U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all

24 similarly situated people equally." *Hartmann v. California Dept. of Corrections and*

25 *Rehabilitation,* 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living*

26 *Ctr.,* 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive

27 identical treatment and resources." *Id.* (citations omitted). "To state a claim under 42 U.S.C.

28 § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff

must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Where state action "does not implicate a fundamental right or suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008)).

"[T]he protections of the Fourteenth Amendment extend to state prisons." *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Lee v. Washington*, 390 U.S. 333, 334 (1968)). "In the prison context, however, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological reasons.'" *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993)).[6]

### 4. Analysis

To the extent Plaintiff has alleged that his rights under the Equal Protection Clause were violated because Defendants do not properly train inmate workers, while other hypothetical non-inmate kitchen workers are trained, his claim is without merit. Defendants have produced evidence that inmate kitchen workers are provided with training, although they acknowledge they cannot locate a document specifically establishing that Plaintiff received this training. Moreover, Plaintiff has not come forward with any actual evidence to demonstrate that non-inmate kitchen workers at NNCC are provided with training, as he alleges, let alone that they were provided with training in an effort to discriminate against Plaintiff based on his status as an inmate culinary worker.

---

[6] Racial classification, however, is still governed by the strict scrutiny standard, which requires that the state show the racial classification is "narrowly tailored" and "further compel[s] governmental interests," and not the more lenient rational basis standard set forth in *Turner*. *See Johnson v. California*, 543 U.S. 499, 505 (2005). *Turner* has been applied in addressing First Amendment challenges (freedom of association, limits on inmate correspondence, restrictions on access to the courts, restrictions on receipt of subscription publications, work rules limiting prisoners' attendance at religious services), some due process claims (involuntary medication of mentally ill prisoners), and restrictions on the right to marry. *See id.* at 510 (citations omitted).

1    In his cross-motion for summary judgment, Plaintiff changes the context of his equal

2    protection claim by asserting that the basis for the claim is the fact that Plaintiff was not provided

3    with safety training while other inmates received such training. As Defendants point out, this is

4    not the claim alleged in the complaint. Even if the court liberally construed the complaint as

5    encompassing this allegation, the claim still fails because Plaintiff has introduced no evidence in

6    the record to establish that Defendants provided other inmates with safety training with an intent

7    to discriminate against him.

8    Therefore, the court recommends that Defendants' motion be granted and Plaintiff's

9    motion be denied as to this claim.

10   **D. Qualified Immunity**

11   Having recommended that Defendants' motion be granted in all substantive respects, the

12   court need not reach their qualified immunity argument.

13   **IV. RECOMMENDATION**

14   **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING**

15   Plaintiff's cross-motion (Doc. # 69), and **GRANTING** Defendants' motion (Doc. # 66) and,

16   entering **JUDGMENT** in favor of Defendants and against Plaintiff with respect to the

17   Fourteenth Amendment equal protection claim and Eighth Amendment deliberate indifference

18   claim, and **DISMISSING WITHOUT PREJUDICE** the retaliation claim.

19   The parties should be aware of the following:

20   1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

21   this Report and Recommendation within fourteen days of receipt. These objections should be

22   titled "Objections to Magistrate Judge's Report and Recommendation" and should be

23   accompanied by points and authorities for consideration by the district judge.

24   2. That this Report and Recommendation is not an appealable order and that any notice of

25   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

26   until entry of judgment by the district court.

27   DATED: January 27, 2015

28   _____
     WILLIAM G. COBB
     UNITED STATES MAGISTRATE JUDGE